BERNICE M. BURLEW et al., Respondents-Appellants, v AMERICAN MUTUAL INSURANCE COMPANY, Appellant-Respondent.

Fourth Department, January 27, 1984

APPEARANCES OF COUNSEL

*Harter, Secrest & Emery* (*James Moore* of counsel), for appellant-respondent.

*Stephen D. Aronson* for respondents-appellants.

### OPINION OF THE COURT

SCHNEPP, J.

In this action plaintiffs seek compensatory and punitive damages from defendant, a workers' compensation insurance carrier, based on the claim that defendant negligently and in bad faith delayed authorization for medical treatment for a work-related injury. Defendant appeals and

plaintiffs cross-appeal from an order of Special Term which dismissed the complaint for failure to state a cause of action, except to the extent that the complaint is based upon a claim that the defendant acted in bad faith.

Defendant is the workers' compensation insurer for Voplex Corporation which employed plaintiff Bernice Burlew. On July 30, 1979 she became ill after breathing certain fumes at work and thereafter began receiving workers' compensation benefits from the defendant. Later her physician determined that surgery was necessary to correct a condition which she asserts is causally related to her illness. Defendant's authorization was requested by the physician but was not received for some four or five months. This lawsuit was instituted in January, 1983.

In opposition to defendant's motion to dismiss the complaint for failure to state a cause of action (CPLR 3211, subd [a], par 7), Mrs. Burlew submitted an affidavit in which she claims that her attending physician advised her of the necessity of surgery "within two or three months from the injury", and that, despite repeated requests for authorization by her physician, defendant neglected and failed to grant authorization "as late as on March 1, 1980". As indicative of defendant's "bad faith" Mrs. Burlew states that while she was waiting for authorization "an agent of the defendant visited [her] at her home and during the course of an interview * * * yelled at [her], in words or substance: 'You're crazy if you think we're going to support you for the rest of your life' ". She also alleges as another example of bad faith the defendant's procurement of an affidavit from an employee in personnel purporting to give an expert opinion that her injury was due to a pre-existing injury. Furthermore, she claims in her affidavit that defendant "[i]n its dealings with the general public, and in particular with [her] * * * [has] engaged in a fraudulent scheme evincing such a high degree of moral turpitude and such wanton dishonesty as to imply a criminal indifference to its civil obligations."

Defendant argues that the action is barred by the exclusivity of the Workers' Compensation Law, that no privity exists which would allow the plaintiff to enforce the contract between the defendant and the Voplex Corporation,

that the compensatory damages sought are not cognizable in law and that punitive damages are not recoverable. Defendant further argues that the plaintiffs' bad faith cause of action, which is based on defendant's failure to timely authorize medical treatment, and claimed to be a breach of defendant's insurance contract, does not give rise to or state a cause of action for tortious conduct as a matter of law.

Every employer subject to the Workers' Compensation Law must "secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of the employment without regard to fault" (Workers' Compensation Law, § 10). The liability of an employer to provide compensation is "exclusive and in place of any other liability whatsoever". (Workers' Compensation Law, § 11.) A claim made under the Workers' Compensation Law for a surgical operation "costing more than seventy-five dollars" is not valid "unless such special services shall have been authorized by the employer or by the board, or unless such authorization shall have been unreasonably withheld, or unless such special services are required in an emergency." (Workers' Compensation Law, § 13-a, subd [5].) Under the procedures to obtain such authorization a claimant's attending physician must request and secure authorization from the employer or insurance carrier or the chairman of the board by setting forth the medical necessity for the special service required (12 NYCRR 325-1.4 [a] [1]). The request may be expedited and there are time limitations within which the requested authorization must be granted or denied. In the event of refusal, a notice must be filed by the carrier with the chairman (12 NYCRR 300.23 [d]). If authorization or denial is not forthcoming within four working days and the patient is hospitalized, or within 21 calendar days, if patient is not hospitalized, the chairman may issue an order after investigation authorizing the special services on the ground that such authorization has been unreasonably withheld, and the employer or carrier is liable for the payment for such special services and investigation (12 NYCRR 325-1.4 [a] [7]).

The basic claim raised by plaintiffs, as we view it, is that defendant intentionally and in bad faith caused plaintiff

Bernice Burlew emotional distress by wrongfully withholding authorization for the surgery for some four or five months. The threshold issue is whether the Workers' Compensation Law provides the exclusive remedy against the compensation carrier for the harm which may have occurred as the result of this alleged delay.

As we have pointed out, the Workers' Compensation Law provides the exclusive remedy to an employee for a work-related injury. In addition the law is settled that an employee has no cause of action against his employer for the negligent aggravation of such injury (*Matter of Parchefsky v Kroll Bros.*, 267 NY 410; *Young v International Paper Co.*, 282 App Div 750). Furthermore, a compensation carrier stands in the place of the employer and is subrogated to its rights and claims when the carrier performs its obligations under its insurance policy and pays the contractually provided for compensation benefits. It may avail itself of any defense possessed by its insured, the employer (see 57 NY Jur, Subrogation, § 26). It may be concluded, therefore, that if the Workers' Compensation Law affords the sole and exclusive remedy against an employer for a work-related injury, it also precludes the maintenance of a common-law action against the compensation carrier for the same injury (see *Penn v Standard Acc. Ins. Co.*, 4 AD2d 796).

Thus, if in this case plaintiffs seek damages for a work-related physical injury, that is, an injury or any aggravation thereof which is compensable under the law or for which a compensation claim was filed, the Workers' Compensation Law constitutes a bar to their action. Under these circumstances a full remedy against the carrier is available in compensation and to permit the institution of an independent cause of action in tort for damages for an injury compensable in Workers' Compensation would violate the policy, if not the specific terms, of the exclusivity provision of the law. Furthermore, we note that the statutory plan provides a remedy in the event of a delay or denial of authorization for special medical services.

On the other hand, if the injury complained of did not arise out of and in the course of employment, but out of plaintiff's status as a claimant seeking compensation, the

exclusivity provision of the act would be inapplicable. The claim for damages then does not result from an industrial injury compensable under the Workers' Compensation Law but from a second, separate and independent injury resulting from the intentional act of the carrier and its agents. Such injury does not arise out of the original employment relationship or from the performance of services growing out of and incidental to employment, but solely out of the employee's relationship with the carrier (see, generally, Workers' Compensation Insurer — Liability, Ann., 8 ALR4th 902). A carrier which commits an intentional tort loses any immunity it may have under the Workers' Compensation Law. Its conduct is its own act and responsibility as distinguished from that of the employer. It might then properly be held liable based on substantive law for a tort such as intentional infliction of emotional distress. The rationale, of course, in this instance is that the mental distress an employee suffered as a result of the carrier's refusal to comply with the Workers' Compensation Law is not an injury arising out of and in the course of employment, but one arising solely from the claimant's relationship with the carrier.

With this in mind we must next consider whether plaintiffs' complaint states a cause of action independent of the workers' compensation claim, for if it does it will withstand the within motion. A complaint survives a motion to dismiss for failure to state a cause of action if it gives the court and the parties notice of what is intended to be proved and the material elements of the cause of action. A motion to dismiss a pleading for failure to state a cause of action will fail, "if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (*Guggenheimer v Ginzburg,* 43 NY2d 268, 275). We must take the complaint's factual allegations as true (*Underpinning & Foundation Constructors v Chase Manhattan Bank,* 46 NY2d 459, 462) and affidavits submitted on the motion may be considered only to determine whether plaintiff has a cause of action (*Rovello v Orofino Realty Co.,* 40 NY2d 633, 635). "When evidentiary material is considered, the criterion is whether the proponent of the pleading has a cause of action, not whether he has

stated one, and, unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it * * * dismissal should not eventuate" (*Guggenheimer v Ginzburg, supra,* p 275; see, also, *Meese v Miller,* 79 AD2d 237, 244; *Etterle v Excelsior Ins. Co.,* 74 AD2d 436, 440).

■ Plaintiffs' first cause of action is based on the theory that defendant owed a special duty to use reasonable care in authorizing and approving the necessary surgery in a timely fashion and that defendant breached its duty by delaying and withholding authorization and in otherwise failing to exercise any degree of care. Regardless of the terminology used, however, the cause of action essentially charges defendant with a failure to perform its obligation under its insurance contract, i.e., a breach of contract. The general rule is that "[a] breach of contract does not give rise to a tort action * * * in the absence of special additional allegations of wrongdoing" (*Wegman v Dairylea Coop.,* 50 AD2d 108, 112). The allegations in the complaint of malice, wantonness and grossly negligent conduct and the conclusory claims in the affidavit, which are obviously made to buttress the suit for punitive damages, cannot convert the action from one in contract to one in tort (see *Charles v Onondaga Community Coll.,* 69 AD2d 144, 148). Generally, nonperformance of a promise constitutes nonfeasance which leads to no tort liability and is actionable only as a breach of contract (see Prosser, Torts [4th ed], § 93, p 623). Thus, even assuming that privity is present and that defendant owed plaintiffs a special duty under the contract, there is no allegation of a breach of duty separate from a breach of contract and no tort cause of action is stated. A failure to perform a contract must be enforced in an action on that contract, in which eventuality whether a special duty was owing to a third person by a party to the contract may be determined.

■ In the second cause of action plaintiffs allege that defendant had an obligation to act in good faith with respect to their "third-party beneficiary" claims and that defendant acted intentionally and in gross disregard of their interest as well as in a "willful, malicious, wanton

and otherwise grossly negligent" manner. Plaintiffs allege that because of defendant's "bad faith", they sustained damages which include "mental and nervous shock". This cause of action cannot pass muster as an action for the specific intentional tort of outrageous conduct causing mental disturbance or, in fact, any other tort. An action for intentional infliction of emotional distress lies only where there has been intentional or reckless conduct toward another which is so shocking and outrageous that it exceeds all reasonable bounds of decency (see PJI 3:6, 1983 Cum Supp, p 34). Viewing the allegations from a perspective most favorable to plaintiff, no such cause of action is discernible. "There is no allegation or evidence that the defendant conducted a planned program of harassment or threats; no evidence of the presence of vindictiveness, taunting or derision" (*Nestlerode v Federal Ins. Co.,* 66 AD2d 504, 507). Although freedom from mental disturbance is a protected interest, the conduct charged to defendant is not so egregious or of such a character as to give rise to liability (see *Fischer v Maloney,* 43 NY2d 553).

Thus, we conclude that plaintiffs' complaint fails to state any cognizable cause of action in tort which would permit them to pursue a common-law remedy based on defendant's alleged failure to authorize needed surgery, and that in any event plaintiff Bernice Burlew is not totally without a remedy under the Workers' Compensation Law. The derivative cause of action and claim for punitive damages necessarily fall as well.

Plaintiffs' application on this appeal for leave to replead the bad faith cause of action and the allegations related to punitive damages should be denied. Plaintiffs' opposing papers on the motion to dismiss did not seek leave to replead nor is there any evidence presented which convinces us that a bona fide claim exists (see CPLR 3211, subd [e]; Siegel, NY Prac, § 275, p 332).

Accordingly, the claim that defendant acted in bad faith should be dismissed along with the remainder of the complaint.

DILLON, P. J., BOOMER, GREEN and O'DONNELL, JJ., concur.

Order unanimously modified, and, as modified, affirmed without costs, in accordance with opinion by SCHNEPP, J.